IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LOUIS JAMES THIBODEAUX,

        Plaintiff,                Civil No. 05-1409-AA

        v.                            ORDER

BRIAN BELLEQUE, et al.,

        Defendants.

AIKEN, District Judge.

    Plaintiff, an inmate at the Oregon State Penitentiary, filed a complaint under 42 U.S.C. § 1983 alleging that defendants violated his constitutional rights by removing him from a work assignment and searching his cell because of his race, and failing to provide eye surgery and dark glasses.

1 - ORDER

By Order (#99) entered December 20, 2006, plaintiff's dark glasses claim was dismissed. Before the court are the parties' cross-motions for summary judgment as to plaintiff's remaining claims (#62) and (#115).

Plaintiff's Claim One alleges "Racial Discrimination" arising two separate incidents. Plaintiff alleges that defendants "wrongfully removed plaintiff from his work assignment," and searched his cell for drugs.

Cell search claim:

On November 15, 2004, prison authorities searched plaintiff's cell, with the aid of a drug detection dog. The drug detection dog gave a positive response during the search of plaintiff's cell. Plaintiff's person was searched based on the alert of the narcotics dog. No drugs were found in either plaintiff's cell or on his person. Plaintiff was asked to give a urine sample and allowed to return to his cell pending the outcome of the drug test.

Random cell searches do not violate the Eighth Amendment and inmates have no Fourth Amendment expectation to such privacy. Hudson v. Palmer, 468 U.S. 517 (1984).

In this case, plaintiff's cell was searched after drugs were found in a cell occupied by other inmates. Defendants

2 - ORDER

contend that plaintiff's cell was searched "after a drug detection dog found drugs in a cell on the same tier as plaintiff's cell" and that "plaintiff's cell was searched, along with all the other cells on the same tier." Defendants' Response (#116) p. 3. Plaintiff argues that the drugs were found on the "third tier" and that "not every cell in E-Block was searched, only my cell." These disputes are not material because as noted above, inmates have no constitutional right or expectation to privacy in their cells.

Plaintiff also apparently attaches significance to the fact that the narcotics were found in a cell occupied by "two African American inmates." Id.; see also, Plaintiff's Response to Affidavit of Thomas Watson (#121), p. 1 ("I notice that Defendant Watson did not say what race those two inmates were.")

Given the racial composition of the inmate population at the Oregon State Penitentiary, I find the fact that plaintiff's cell was searched after drugs were found in the cell of other African American inmates is insufficient to establish that plaintiff was singled out or discriminated against on the basis of his race.

Plaintiff also argues that his cell was not searched

3 - ORDER

because the dog alerted and that the dog was not brought in until the next day. Plaintiff's Response to Affidavit of Thomas Watson (#121).

These matters are not relevant. Plaintiff's cell and person are subject to random searches. When the drug detection dog reacted to plaintiff's person, plaintiff was required to provide a urine sample. As noted by defendants: "The drug dog was not concerned about plaintiff's race. The drug dog was trained to look for drugs." Defendants Response (#116), p. 3.

Plaintiff argues that his "life was in danger" because he was not placed in Disciplinary Segregation pending the outcome of his drug test. See, Plaintiff's Response to Affidavit of Thomas Watson (#121), p. 4. However, Defendants' Exhibit 101, Affidavit of Thomas Watson, indicates that inmates are only housed in Disciplinary Segregation pending a hearing for misconduct. Defendants contned that if plaintiff had been placed in disciplinary segregation "he would have lost his housing status and his single cell, a highly sought after housing assignment. Defendants' Response (#116) p. 3.

In any event, plaintiff has not alleged any facts to show that he was harassed or assaulted by other inmates, or that he was otherwise harmed by defendants failure to place him in

4 - ORDER

Disciplinary Segregation, or that he was harmed in any way by the search of his cell or his person. Since no drugs were found in plaintiff's cell, he was allowed to retain his single cell assignment.

Based on these un-controverted facts, I find that there is no evidence to support a claim of racial discrimination that defendants are entitled to judgment as a mater of law as to plaintiff's claim based on the cell search incident.

<u>Work assignment claim:</u> Plaintiff had an inmate work assignment at OSP that involved sweeping and mopping Tuesday through Friday. On February 14, 2005, Corrections Officer Cook asked plaintiff to sort clothing to which plaintiff replied "not my job." Subsequently, Officer Cook asked plaintiff to sweep and mop Tier 5 to which plaintiff replied "I only mop on Tuesday and Thursday." Cook then submitted a program failure report and plaintiff was removed from his work assignment.

There is no constitutional right to a job or rehabilitation in prison. <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1254-55 (9th Cir. 1982); <u>Rizzo v. Dawson</u>, 778 F.2d 527, 530 (9th Cir. 1985).

Plaintiff argues that defendant Cook's made "abusive and

5 - ORDER

racist statements and remarks towards plaintiff." Plaintiff's Second Reply (#113) p. 2. However, the United States Constitution does not impose liability for ordinary trash talk. <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987) (vulgarity and verbal harassment not actionable); <u>Guat v. Sunn</u>, 810 F.2d 923, 925 (9th Cir. 1987)("[I]t trivializes the eighth amendment to believe that a threat constitutes a constitutional wrong."); <u>see also</u>, <u>Hopson v. Frederickson</u>, 961 F.2d 1374, 1378 (8th Cir. 1992)(racial slur and accompanying threat of violence not actionable).

Plaintiff argues that when he refused to perform his duties he should have been issued a misconduct report and that because Officer Cook did not issue a misconduct report, plaintiff's allegations of discrimination "must be true." However, Officer Cook was not required to issue a misconduct report. OAR 291-105-0021(1) provides that ODOC "employees shall be expected to use less than formalized procedures if the act(s) of misconduct do not constitute a threat to the life, health, facility security or good order...."

In this case, Officer Cook determined that plaintiff's conduct did not constitute such a threat and exercised his discretion to resolve the matter in a less formal manner by

6 - ORDER

submitting a Program Failure Report to his supervisor.

Plaintiff's Response to Affidavit of Sheri Hill (#123) contends that he was "removed because he "filed a complaint on the clothing room Sgt. Heron's brother at TRCI." Elsewhere in the record plaintiff contends that he was removed from his work assignment because he threatened to file a discrimination complaint against defendant Cook for "making racist comments." Plaintiff's Response to Defendants' Response (#118), p. 4.

Plaintiff's impressions of defendants' motives do not constitute evidence of discrimination. There is no evidence in the record to suggest that plaintiff was removed from his work assignment for any racially based reason or for any reason other than his refusal to perform routine tasks associated with that assignment. Defendants are entitled to judgment as a mater of law as to this claim.

Plaintiff's Claim Two alleges "Deliberate Indifference" and "inadequate medical care [for] medically needed eye surgery." The relevant facts concerning plaintiff's Claim Two are as follows:

Plaintiff suffered an injury to his left eye and has had eye surgery. Plaintiff has been examined by a number of times by physicians, including eye specialists. In April, 2001, Dr.

7 - ORDER

Warner felt that plaintiff "may or may not" benefit from a secondary intraocular lens implant, and that the potential for improvement was "poor." In November, 2005, Dr. Samples of the OHSU Eye Institute evaluated plaintiff and indicated that although a lens implant would probably help with plaintiff's peripheral vision, he did not think a secondary lense implant would help plaintiff's central vision. It was Dr. Samples professional judgment that "nothing can be done to restore plaintiff's central vision in his left eye." A lens replacement surgery for plaintiff's left eye, which may improve his peripheral vision, is considered an elective procedure.

In July, 2003, plaintiff settled a lawsuit with the state of Oregon. The settlement agreement provided that plaintiff would make arrangements to purchase medical treatment for his vision from Dr. James Long, an ophthalmologist in Salem, Oregon. Plaintiff was transferred to OSP pursuant to the terms of the settlement agreement in August, 2003, and was issued a purchase of care packet.

The terms of the settlement agreement provided that plaintiff would be transported to Dr. Long's office and that plaintiff would not be required to pay the transport costs.

8 - ORDER

Plaintiff was advised that in order to "purchase care" he needed to complete the paperwork and have the necessary funds deposited his inmate trust account. In August, 2004, plaintiff had $3,259.00 deposited in a optical reserve account but he did not complete the paperwork for the purchase of care with either physician.

In September, 2004, plaintiff requested that the monies deposited in his optical reserve account for medical purposes be transferred to his general inmate trust account. The monies previously deposited in plaintiff's optical medical account were returned at plaintiff's direction to the sender. On November 10, 2004, $2,750 was deposited in plaintiff's general inmate trust account to spend at his discretion.

In order to establish a claim that medical treatment has been denied or inadequately rendered, a prisoner must establish that there has been a "deliberate indifference to [his] serious medical needs." Estell v. Gamble, 429 U.S. 97, 104 (1976); Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000); see also, Clements v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002).

Whether a medical condition is serious is ordinarily a question left to physicians, Brownell v. Figel, 950 F.2d 1285,

9 - ORDER

1291 (7th Cir. 1991) <u>Davis v. Jones</u>, 936 F.2d 971, 992 (7th Cir. 1991), but in general a medical condition is serious if it is life threatening or poses a risk of needless pain or lingering disability if not treated at once. <u>Id</u>., 936 F.2d at 972.

Medical malpractice, even gross malpractice, does not amount to a violation of the Eight Amendment, <u>see</u>, <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir. 1980). Thus, a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment does not raise a claim under 42 U.S.C. § 1983. <u>See</u>, <u>eg</u>., <u>Shields v. Kunkle</u>, 442 F.2d 409, 410 (9th Cir. 1971); <u>Mayfield v. Craven</u>, 433 F.2d 873 (9th Cir. 1970); <u>McKinney v. People of the State of California</u>, 427 F.2d 160 (9th Cir. 1970) (per curiam) and the cases collected in the Annotation, <u>Relief Under Federal Civil Rights Act to State Prisoner Complaining of Denial of Medical Care</u>, 28 A.L.R. Fed. 179, 366-379 (1976).

Because courts lack medical expertise, "where prisoners receive some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment." <u>Miranda v. Munoz</u>, 770 F.2d 255, 259 (1st Cir. 1985); <u>Layne v. Vinzant</u>, 657 F.2d

10 - ORDER

468, 474 (1st Cir. 1985); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (difference of opinion between inmate and medical authorities does not give rise to a § 1983 claim); see also, Sanchez v. Vild, 891 F.2nd 240, 242 (9th Cir. 1989)(difference of opinion between physicians over medical treatment does not constitute deliberate indifference).

Liability may be imposed only where the decision by the medical professional is so objectively unreasonable as to demonstrate that it was not based on professional judgment. Parham v. J.R., 442 U.S. 584, 409 (1979); Estate of Conners v. O'Conner, 846 F.2d 1205, 1209 (9th Cir. 1988), cert. denied, 489 U.S. 1065 (1989).

In this case, defendants acknowledge that plaintiff has a serious medical need. However, the record reflects that plaintiff has been examined by eye doctors and specialists who have concluded that a lense implant will not improve plaintiff's central vision. Although such surgery may improve plaintiff peripheral vision, it is considered an elective procedure.

The opinion of these medical professionals is not "so objectively unreasonable as to demonstrate that it [is] not based on professional judgment." Plaintiff disagrees with

11 - ORDER

these experts' medical assessment. However as discussed above, plaintiff's opinion does not establish a claim cognizable under 42 U.S.C. § 1983.

Plaintiff's argument that "Dr. Pearson inaccurately summarized his left eye history" is not persuasive. Plaintiff's medical records are part of the record before the court and speak for themselves.[1] The medical opinions of the various treating physicians are clear and unequivocal.

Moreover any omissions or errors in the history of plaintiff's medical treatment are insignificant and do not create material issues of fact.[2] Dr. Pearson's medical opinion that plaintiff's central vision will not benefit from a lense implant is based on his medical examination of

---

[1] Defendants concede that Defendants' Exhibit 101, Affidavit of Alan Pearson, Attachment 1, p. 77, "is a document entitled Linn County Jail Medical Transfer Sheet and pertains to another inmate, not plaintiff. However, the information on this document dated January 31, 1995 had no bearing on the opinion formed by Dr. Pearson in his affidavit." I find that the apparently inadvertent inclusion of this single page document in plaintiff's voluminous medical record is not material and would have no bearing on Dr, Pearson's medical opinion of plaintiff's condition.

[2] For example, whether plaintiff's original eye injury was caused by being struck in the eye with a beer bottle, or otherwise, and plaintiff's age at the time of the initial eye trauma are not relevant to his present condition. Any inconsistencies in the record concerning such details do not create genuine issues of material fact.

12 - ORDER

plaintiff on May 26, 2004 and not the history of plaintiff's injury or treatment.[3]

Plaintiff argues that Dr. Pearson's review of his medical record is "missing the recommendations of Dr. You and Dr. Miller." Plaintiff's Response (#124) p. 2. However, as noted above, a dispute between physicians over medical treatment does not amount to deliberate indifference to a serious medical need. Sanchez v. Vild, supra. Accordingly, whether Dr. Pearson may have failed to consider, or failed to agree with other physicians' medical opinions or recommendations, is immaterial.

In addition there is no evidence to support plaintiff's contention that defendants interfered with his "plan to purchase his own care through outside agencies."[4] Defendants' Exhibit 105, Affidavit of William Cahal and Attachment 6, establishes that defendants fulfilled the Department of Corrections' obligations under the settlement agreement and

---

[3]Although Dr. Pearson reviewed the impressions of Dr. Samples who evaluated plaintiff on November 23, 2005, and concurs with Dr. Samples conclusions. See, Defendants' Exhibit 101, Pearson Affidavit, p. 7.

[4]See, Plaintiff's Response to Affidavit of Alan Pearson O.D. (#124) p. 2

13 - ORDER

plaintiff has not pursued the process for "purchase of care."

I find that there are no genuine issues of material fact as to plaintiff's Claim Two. The record establishes that plaintiff has received constitutionally adequate medical care for his eye and that defendants are entitled to judgment as a matter of law on plaintiff's claim for "deliberate indifference ... [for] inadequate medical care, medically needed eye surgery and treatment."

Based on all of the foregoing, Defendants' Cross Motion for Summary Judgment (#115) is allowed; Plaintiff's Motion for Summary Judgment (#62) is denied. This action is dismissed with prejudice.

IT IS SO ORDERED

DATED this 31 day of August, 2007.

Ann Aiken
United States District Judge

14 - ORDER