IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

LOUIS JAMES THIBODEAUX,

          Plaintiff,        Civil No. 05-1409-AA

        v.                 ORDER

BRIAN BELLEQUE, et al.,

          Defendants.

AIKEN, District Judge.

    Plaintiff, an inmate in the custody of the Oregon Department of Corrections, filed a complaint under 42 U.S.C. § 1983 alleging that defendants violated his Eighth and Fourteenth Amendment rights by removing him from a work assignment and searching his cell because of his race, and failing to provide eye surgery and dark glasses. Plaintiff's Claim One alleged "Racial Discrimination;" plaintiff's Claim II alleged "Deliberate Indifference" to his medical needs.

    By Order (#135) entered September 5, 2007, defendants' Cross Motion for Summary Judgment (#115) was allowed and this action was dismissed.

1 - ORDER

By Order (Memorandum) (#145) entered April 3, 2009, the
Ninth Circuit Court of Appeals affirmed in part, vacated in
part and remanded for further proceedings as follows:

> In both his complaint and his motion for
> summary judgment, Thibodeaux alleged that prison
> officials retaliated against him for filing
> lawsuits. In support of this claim, he submitted a
> document in which a prison official told him that
> he was not hired for a prison job because, in part,
> he had threatened to bring lawsuits. Because this
> appears to be a colorable First Amendment
> retaliation claim and the district court did not
> address it, we remand so that the court may
> consider this claim in the first instance. *See
> Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)
> (stating that to succeed on a retaliation claim, a
> plaintiff need not establish an independent
> constitutional interest in the privilege that he
> was denied, "because the crux of his claim is that
> state officials violated his First Amendment rights
> by retaliating against him for his protected speech
> activities.")

Memorandum (#145) p. 3.

Pursuant to this court's Order (#148) entered May 15,
2009, the parties were allowed to submit further evidence and
argument regarding their cross motions for summary judgment
(#62) and (#115) "as to plaintiff's 'colorable First Amendment
retaliation claim' that prison officials retaliated against
him for filing lawsuits." Order (#148) p. 1. That "claim"[1] is
now before the court.

The "colorable First Amendment retaliation claim"
inferred by the Court of Appeals is apparently based on the

---

[1]Neither plaintiff's complaint nor his motion for summary
judgment refer to any claim under the First Amendment. As noted
above, plaintiff's complaint alleges claims under the Eighth and
Fourteenth Amendments for alleged racial discrimination and
deliberate indifference to medical needs.

allegation in plaintiff's copmplaint identifying defendant Long as follows: "Defendant Long is employed as <u>Assistant Superintendent Security</u> at <u>Oregon State Penitentiary</u>. This defendant's involvement occurred in February of 2005, and told plaintiff that the reason he is not given a job is because he always threatens with lawsuits, and that plaintiff isn't going to get any help from him." Complaint (#1) p. 3.[2]

Plaintiff has submitted an Inmate Communication Form dated May 18, 2005, in which plaintiff complains about "being denied work in the African American Uhuru Sa Sa." Plaintiff's Additional Evidence and Argument (#149), Exhibit 7.

Defendant Long responded to plaintiff's grievance as follows: "Threatening legal action is not a way to get action from me. Your reputation of being difficult to work with, threats of law suits, all played into the decision not to hire at this time. Another request may not hurt as an article in the most recent WSB states Uhuru is looking for help." <u>Id</u>. This is apparently the document referenced in the Court of Appeals Memorandum as creating a "colorable First Amendment

---

[2]Plaintiff also alleges that defendant Austin denied him a job "out of vindictiveness towards plaintiff, for filing lawsuits." Complaint (#1) p. 4. This allegation is unsupported by any specific factual allegations and fails to state a claim as a matter of law. <u>See</u>, <u>Rizzo v. Dawson</u>, 788 F.2d 527, 532 n. 4 (9th Cir. 1985) (bare allegation of arbitrary retaliation insufficient to avoid dismissal); <u>see also</u>, <u>Sherman v. Yakahi</u>, 549 F.2d 1287, 1300 (9th Cir. 1977) (broad conclusory statements unsupported by factual allegations are not sufficient to support a cause of action under 42 U.S.C. § 1983). Unlike the claim against defendant Long discussed below, plaintiff has not offered any evidence in support of the allegation that defendant Austin denied him a job "for filing lawsuits."

retaliation claim" because a "prison official told [plaintiff] that he was not hired for a prison job because, in part, he had threatened to bring lawsuits. Memorandum (#45) p. 3.

In order to prove a First Amendment retaliation claim, plaintiff must establish: "(1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-568 (9th Cir. 2005); see also, Rizzo v. Dawson, 778 F.2d 527, 530 (9th Cir. 1985) (citing Procunier v. Martinez, 416 U.S. 396, 412 (1974)); Pratt v. Rowland, 65 F.3d 802 (9th Cir. 1995); Schroeder v. McDonald 55 F.3d 454, 461-462 (9th Cir. 1995); Barnett v. Centoni, 331 F.3d 813, 816 (9th Cir. 1994).

At the summary judgment stage of a retaliation claim proceeding, "an inmate has the initial obligation to prove that prison officials retaliated against him for exercising his constitutional rights, and that the alleged retaliatory action did not advance legitimate penological goals." Hunter v. Heath, 95 F. Supp.2d 1140 (D. Or. 2000) (distinguished on other grounds Jordan v. Exho Rural Fire Protection District 2007 WL 892971 (D. Or.). If the inmate meets this burden, prison officials must establish that they would have reached the same decision even in the absence of protected conduct. Soranno's Gasco, Inc., v. Morgan, 874 F.2d 1310, 1314 (9th Cir.

1989).    Defendants   prevail   if   they   can   "show,   by   a
preponderance of the evidence, that [they] would have reached
the same decision as to the adverse action even in the absence
of the protected conduct."  Ostad v. OHSU, 327 F.3d 876, 882
(9th Cir. 2003).

The   nature   of   a   retaliation   claim   requires   that   it   be
"regarded   with   skepticism,   lest   federal   courts   embroil
themselves   in   every   disciplinary   act   that   occurs   in   state
penal   institutions."   Adams v. Rice 40 F.3d 72, 74 (4th Cir.
1994). The Ninth Circuit has cautioned that retaliation claims
brought   by   prisoners   must   be   evaluated   in   light   of   concern
over   "excessive   judicial   involvement   in   day-to-day   prison
management,   which   'often   squander(s)   judicial   resources   with
little   offsetting   benefit   to   anyone."   Pratt v. Rowland, 65
F.3d 802, 807 (9th Cir. 1995) (quoting Sandin v. Conner 472,
482    (1995)).    In    particular,    courts    should    "'afford
appropriate   deference   and   flexibility'   to   prison   officials   in
the evaluation of proffered legitimate penelogical reasons for
conduct alleged to be retaliatory."  Id. (quoting Sandin, 515
U.S. at 482).  "[F]ederal courts must remember that the duty
to   protect   inmates'   constitutional   rights   does   not   confer   the
power to manage prisons or the capacity to second-guess prison
administrators, for which we are ill-equipped." Bruce v. Ylst,
351 F.3d 1283, 1290 (9th Cir. 2003).

Defendants   have   submitted   the   Affidavit   of   Gerald   Long
in   which   defendant   Long   states   that   plaintiff   was   not

excluded from any program assignment because he files
lawsuits. Rather, "Inmate    Thibodeaux has a poor attitude
which makes him a difficult inmate worker, he argues with
supervisors and threatens to file lawsuits as a means of
manipulating the staff member." Affidavit of Gerald Long
(#165) p. 2.   Thus, in responding to plaintiff's grievance
defendant Long intended to explain to plaintiff that his
manipulative behavior contributed to his work performance
problems.  Defendant Long indicated to plaintiff that he was
not assigned to his requested position because of his
disruptive behavior.   Threats of filing lawsuits was used as
an  example of plaintiff's disruptive  and manipulative
behavior. Id. p. 3.

     Based on the foregoing, I find that to the extent
plaintiff's allegation and defendant Long's response to his
grievance may indicate that plaintiff was denied program
placement in part because of his protected First Amendment
rights, defendants have established a "legitimate penological
goal" for the conduct complained of and that they would have
reached the same decision in the absence of the protected
conduct.  Defendants have established by a preponderance of
the evidence that plaintiff was not placed in his requested
assignment because of a bad attitude, poor work history and
attempts to manipulate staff.  In this light, defendant Long's
reference to plaintiff's tendency to threaten to file lawsuits
can reasonably be construed as an example of plaintiff's

6 - ORDER

manipulative behavior and not the reason plaintiff was not hired.  To the extent the plaintiff's threats of lawsuits might have been a factor in defendants' decision, defendants have established that they would have made the same decision based on plaintiff's attitude and work history - even if he did not have a tendency to threaten to file lawsuits.

Assuming that plaintiff's allegations and defendant Long's grievance response can be construed as creating a material issue of fact concerning a First Amendment retaliation, I find that he [and defendant Austin] are entitled to qualified immunity from liability to plaintiff.

The Ninth Circuit has articulated a two-part analysis for determining official's qualified immunity:  "(1) Was the law governing the officials conduct clearly established? (2) Under the law, could a reasonable officer have believed the conduct to be lawful?"  Neely v. Feinstein, 50 F.3d 1502, 1507 (1995).(citing Act Up/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir. 1993).

Plaintiff has not cited any clearly established law regarding precise issue in this case: whether a prison employee can consider an inmate's threat of litigation as one of the factors in determining an inmate's suitability for a particular program assignment.

Even this court did not recognize that defendant Long's alleged conduct created a "colorable" First Amendment retaliation claim.

In addition, it can be inferred that defendant Long believed that his conduct to be lawful; he would have not have knowingly reduced an admission unconstitutional conduct to writing - particularly if such conduct violated "clearly established" law.

In his Response to Defendants' Supplemental Brief, plaintiff argues that when defendant Long wrote the response to plaintiff's grievance defendant Long did not realize "that it would later come back as a violation of my First Amendment free speech activities." Response (#167) p. 2. Thus, even plaintiff appears to acknowledge that any violation of his First Amendment rights was inadvertent and not in contravention of clearly established law.

Thus, to the extent that defendant Long (or any defendant) may have infringed on plaintiff's First Amendment rights by not hiring him in part because of his filing lawsuits or making threats to file lawsuits, I find that such conduct was not in violation of clearly established law and that a reasonable officer could have believed that such conduct was lawful

Defendants Randal, Dover, and Meyers are alleged to have been involved in plaintiff's medical care based claims which have been dismissed and are no longer before this court. To the extent that plaintiff's allegations implicate any of the other named defendant in the "colorable First Amendment retaliation" claim, they are not alleged to have any personal

involvement in the alleged retaliation.[3] Therefore, the only possible basis of the remaining defendants' liability is respondeat superior.

It is well settled that <u>respondeat superior</u> is not a proper basis for liability under 42 U.S.C. § 1983. <u>Monell v. Dept. of Social Services of City of New York</u>, 436 U.S. 658, 691-694 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362, 375-76 (1976); <u>King v. Atiyeh</u>, 814 F.2d 565, 568 (9th Cir. 1987). Absent an allegation that the named state officials were personally involved in the alleged deprivation of constitutional rights, a complaint under 42 U.S.C. § 1983 does not state a claim. A supervisor may be liable based on his or her personal involvement in the alleged deprivation, or if there is a sufficient causal connection between the supervisor's alleged wrongful conduct and the alleged deprivation, <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989), but a "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989), citing <u>Ybarra v. Reno Thunderbird Mobile Home Village</u>, 723 F.2d 675,

---

[3]The affidavit of Gerald Long indicates that inmate applications for program assignments are reviewed by the "Program Review Committee" consisting of the Activities Supervisor, Recreation staff, security staff assigned to the activities Section and defendant Long. Affidavit of Gerald Long (#165) p. 3. These individuals have not been specifically identified. Defendant Long indicates that "[t]he Supervisor in Activities generally made the decision to accept an application after the Committee review." <u>Id</u>.

680-81 (9th Cir. 1984). See also, Jeffers v. Gomez, 267 F.3d 895, 915 (9th Cir. 2001)(a supervisor faces liability under § 1983 only if there was (1) personal involvement by the supervisor in the constitutional deprivation, or (2) a sufficient casual connection between the supervisor's wrongful conduct and the constitutional violation); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (supervisory liability only when a) actual or constructive knowledge of a pervasive and unreasonable risk of injury; b) deliberate indifference to or tacit authorization of the practice; and c) an affirmative causal link between inaction and the injury). Supervisory officials may also be liable if they "implement a policy so deficient that the policy `itself is a repudiation of constitutional rights' and is `the moving force of the constitutional violation.'" Redman v. County of San Diego, 924 F.2d 1435, 1446 (9th Cir. 1991), cert. denied, 112 S. Ct. 972 (1992) (quoting Hansen v. Black, supra, 885 F.2d at 646, in turn quoting Thompkins v. Belt, 828 F.2d 298, 304 (5th Cir. 1987).

Plaintiff alleges that he told supervisors of violations through reports or complaints, but plaintiff has not established any facts demonstrating that any of the other (supervisory) defendants had any personal involvement in the alleged retaliation for the exercise of plaintiff's First Amendment rights or established a casual connection between a

supervisors wrongful conduct and the alleged constitutional violation.

Summary: The single claim before this court on remand is that prison officials retaliated against plaintiff for filing lawsuits. I find that plaintiff's conclusory allegation that defendant Austin denied him a job "out of vindictiveness towards plaintiff, for filing lawsuits" is unsupported by any factual allegation and fails to state a claim as a matter of law. I find that defendant Long's affidavit establishes that his grievance response does not  create a material issue of fact as to a violation of plaintiff's First Amendment rights. because: 1.) plaintiff's threat of litigation was not the reason he was not selected for the position he wanted but rather was used as an example to illustrate plaintiff's bad attitude and manipulative behavior; and 2.) defendants have established a legitimate correctional goal for the conduct complained of and that they would have reached the same decision in the absence of the protected conduct. To the extent that defendant Long's statement may have indicated an infringement of plaintiff's First Amendment freedom, I find that he is entitled to qualified immunity from liability to plaintiff.  Plaintiff has failed to allege or establish any facts that would subject any of the remaining defendants to liability for any retaliation in violation of plaintiff's First Amendment rights.

There are no genuine issues as to any material fact

remaining in this case and defendants are entitled to judgment as a matter of law as to the claim remanded by the Ninth Circuit Court of Appeals. Thus, to the extent not moot by the court's previous Order (#135) affirmed in part on appeal, defendants' Cross Motion for Summary Judgment (#115) is allowed. Plaintiff's Motion for Summary Judgment (#62) is denied. This case is dismissed.

    IT IS SO ORDERED

    DATED this 14th day of April, 2010.

                    Ann Aiken
                    United State District Judge